UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLEY O'CONNELL-BYRNE,

                Plaintiff,

       v.

HILTON CENTRAL SCHOOL DISTRICT,
HILTON SCHOOL DISTRICT BOARD
OF EDUCATION, CASEY KOSIOREK,
TRACIE CZEBATOL, NED DALE,
STEPHANIE SLOAN, ED MASCADRI,
MARK HILBURGER, THERESE
FLANNERY, MARYANNE CHAFFEE,
NANCY PICKERING, and BRIAN
O'CONNOR,

                Defendants.

_____

**DECISION AND ORDER**

6:23-CV-06308 EAW

## <u>INTRODUCTION</u>

Plaintiff Kelley O'Connell-Byrne[1] ("Plaintiff") alleges that defendants Hilton

Central School District ("the District") and the Hilton School District Board of Education

("the Board"), along with certain District administrators and School Board members,[2]

---

[1]     The Clerk of Court is directed to update the spelling of Plaintiff's first name on the docket sheet to reflect the spelling herein, as provided in Plaintiff's amended complaint and declaration.

[2]     The School Board members named as defendants are Maryanne Chaffee ("Defendant Chaffee"), Therese Flannery ("Defendant Flannery"), Mark Hilburger ("Defendant Hilburger"), Ed Mascadri ("Defendant Mascadri"), Brian O'Connor ("Defendant O'Connor"), Nancy Pickering ("Defendant Pickering"), and Stephanie Sloan

violated her First Amendment rights, and because of her age, discriminated against her, created a hostile work environment, and constructively discharged her in violation of the New York State Human Rights Law ("NYSHRL"), Executive Law § 296(1).  (Dkt. 9).

Presently before the Court is a motion filed by Defendants for judgment on the pleadings, seeking dismissal of Plaintiff's amended complaint in its entirety.  (Dkt. 15).[3] For the reasons that follow, Defendants' motion for judgment on the pleadings is granted in part and denied in part.

## **BACKGROUND**

I.    **Factual Background**

The instant facts are taken from Plaintiff's amended complaint (Dkt. 9), which is the operative pleading.  As is required at this stage of the proceedings, Plaintiff's factual allegations are taken as true.

Plaintiff was employed by the District as an Assistant Principal at Northwood Elementary School ("Northwood").  (*Id.* at ¶ 1).  On April 2, 2021, the Principal of Northwood, Kirk Ashton ("Ashton"), was placed on administrative leave arising from an investigation into allegations that he had engaged in child abuse.  (*Id.* at ¶ 21).  Plaintiff, Defendants, and others observed Ashton, who was touted by Defendants as a "student centered principal," rubbing the heads, shoulders, and backs of students, and having

_____

("Defendant Sloan") (hereinafter collectively referred to as "the Board Member Defendants").

[3]    Defendants also filed a motion to stay discovery pending resolution of the motion for judgment on the pleadings.  (Dkt. 16).  In light of this Decision and Order, that motion is denied as moot.

students sit on his lap.  (*Id.* at ¶¶ 22, 23).  At no time did Plaintiff ever observe Ashton touch the private areas of any student, nor did she become aware that his behavior constituted grooming for abuse prior to his removal.  (*Id.* at ¶¶ 27, 28).  Initially following Ashton's departure, Plaintiff was named interim Principal of Northwood, but she was told by defendant Casey Kosiorek ("Defendant Kosiorek"), Superintendent of the District, that it would only be an interim assignment.  (*Id.* at ¶ 21).

On May 4, 2021, defendant Tracie Czebatol ("Defendant Czebatol"), Director of Reporting and Compliance, asked Plaintiff about her retirement plans, even though Plaintiff would not turn 55 until October 21, 2022.  (*Id.* at ¶ 30).  That same month, follow-up requests were made about Plaintiff's plans to retire, which upon information and belief, were made at the request of Defendant Kosiorek.  (*Id.* at ¶ 30).

On May 21, 2021, Plaintiff requested a transfer to another Assistant Principal position and was told by Defendant Kosiorek that he would support a transfer.  (*Id.* at ¶ 32).  That same date, Defendant Kosiorek privately told Plaintiff that she would not be returning to Northwood and also told school administrators during a cabinet meeting that Plaintiff's removal from Northwood was in the best interest of the culture at the school.  (*Id.* at ¶ 33).

In late May 2021, Plaintiff sent a substitute teacher home for improperly touching a student.  (*Id.* at ¶ 34).  The substitute teacher was related to Defendant Czebatol, and Defendant Kosiorek verbally reprimanded Plaintiff for her actions.  (*Id.* at ¶ 34).  The action by Defendant Kosiorek was part of his pattern and practice of ignoring conduct that could be a precursor to child abuse.  (*Id.* at ¶ 36).

On June 4, 2021, Plaintiff was appointed to the position of Administrator on Special Assignment for a one-year period.  (*Id.* at ¶ 28).  In August of 2021, Plaintiff was informed that she would not receive an Assistant Principal position again, even though she was performing the duties of an Assistant Principal at Village Elementary at the time in addition to assisting the Assistant Superintendent for curriculum and instruction.  (*Id.* at ¶¶ 39, 40).  When an Assistant Principal was hired for Village Elementary in October of 2021, Plaintiff was moved from a private office into a computer lab area for her workspace, which she shared with non-administrative staff and was not conducive for her school administration duties.  (*Id.* at ¶ 41).  The Assistant Principal who was hired at Village Elementary was 29 years old and did not possess certifications that Plaintiff possessed.  (*Id.* at ¶ 42).

In November of 2021 and May of 2022, Plaintiff was again asked about retirement plans.  (*Id.* at ¶¶ 43, 44).  In May or June of 2022, Defendant Czebatol suggested that Plaintiff retire and Plaintiff informed Defendant Czebatol that she was not interested in retiring.  (*Id.* at ¶ 45).  Feeling that it was futile for her to find another Assistant Principal position, on September 6, 2022, Plaintiff tendered her letter of retirement, indicating a retirement date of January 27, 2023.  (*Id.* at ¶¶ 49, 50, 51).  The Board approved Plaintiff's retirement plans on September 13, 2022.  (*Id.* at ¶ 50).

On October 19, 2022, Plaintiff testified in Ashton's criminal trial.  (*Id.* at ¶ 52).  She testified, among other things, that boys were constantly behind Ashton's desk, that she occasionally observed boys sitting on his lap, and that she saw boys sleeping or lying down on a couch in his office.  (*Id.* at ¶ 86).  She testified that everyone at school saw this behavior, including administrators, teachers, and transportation staff, and that while she

was a mandated reporter and thought that Ashton's boundaries were skewed, she did not personally witness anything that rose to the level of reportable conduct. (*Id.*). She alleges that "[a]ll of Ashton's actions with respect to male elementary students were out in the open, were known to teachers and administrators, and were approved by school administration, which referred to Ashton as a 'student centered principal' and posted pictures of a student sitting on his lap on official school social media." (*Id.* at ¶ 87).

Within two hours of Plaintiff's testimony being completed, defendant Ned Dale ("Defendant Dale"), the Assistant Superintendent for Human Resources, informed Plaintiff that she was being placed on administrative leave. (*Id.* at ¶ 53). On October 21, 2022, Plaintiff's 55th birthday, she was issued a letter indicating that the District was pursuing a Part 82 proceeding with the New York State Department of Education to terminate Plaintiff's license as a teacher and administrator. (*Id.* at ¶ 55). In November of 2022, the District threatened to take legal action against Plaintiff. (*Id.* at ¶ 56). As a result of her testimony in the Ashton trial, Plaintiff was excluded from retirement service celebrations, denied information relating to health insurance options, and barred from school grounds. (*Id.* at ¶¶ 57, 58, 59).

## II.    **Procedural Background**

Plaintiff commenced this action in state court on May 15, 2023 (Dkt. 1-1 at 27-36), and it was removed to this Court on June 6, 2023, on the basis for federal question jurisdiction (Dkt. 1).  Defendants filed a motion to dismiss for failure to state a claim on June 26, 2023.  (Dkt. 6).  On July 17, 2023, Plaintiff filed an amended complaint (Dkt. 9), and Defendants' motion to dismiss was denied as moot (Dkt. 11).  On July 28, 2023, Defendants filed an answer to Plaintiff's amended complaint.  (Dkt. 12).

On August 29, 2023, Defendants filed the instant motion for judgment on the pleadings (Dkt. 15) and motion to stay discovery (Dkt. 16).  On September 18, 2023, Plaintiff filed her opposition (Dkt. 23) to the motion for judgment on the pleadings, and on September 27, 2023, Defendants filed their reply (Dkt. 24).

## DISCUSSION

## I.    **Legal Standard**

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008).  "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'"  *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

- 6 -

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.   **Defendants' Motion for Judgment on the Pleadings**

In her amended complaint, Plaintiff alleges causes of action for (1) violation of Executive Law § 296(1)(a) arising from Defendants' discrimination against Plaintiff on the basis of her age, (2) violation of Executive Law § 296(1)(h) for harassment on the basis of age, and (3) violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983.  She seeks compensatory and punitive damages, attorneys' fees, and other costs and disbursements.

Defendants seek dismissal of all of Plaintiff's claims, arguing that: (1) Plaintiff fails to plead a First Amendment claim; (2) Plaintiff has not pleaded the requisite personal involvement of the individual Defendants; (3) the individual Defendants are entitled to qualified immunity; (4) the amended complaint does not plead a *Monell* claim against the District and Board; (5) Plaintiff's NYSHRL claim is untimely; (6) Plaintiff failed to properly exhaust administrative remedies; and (7) Plaintiff fails to state NYSHRL age discrimination or harassment claims.

The Court notes that the parties have filed declarations and numerous exhibits in support of their respective positions on the pending motion.  But "'[b]ecause a judgment on the pleadings focuses on the pleadings themselves, and not on matters outside of the pleadings such as affidavits,' . . . the Court will not consider the affidavit at this juncture." *Air China Ltd. v. Nelson Li*, No. 07 Civ. 11128 (LTS)(DFE), 2009 WL 857611, at *6 n.7 (S.D.N.Y. Mar. 31, 2009) (quoting *Sears Petroleum & Transport Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003)); *see Toto v. McMahan, Brafman, Morgan & Co.*, No. 93 CIV. 5894 (JFK), 1997 WL 458764, at *3 (S.D.N.Y. Aug. 11, 1997) ("For

purposes of the motion for judgment on the pleadings, the Court has not considered the affidavit submitted by plaintiff Hecht because factual allegations contained in affidavits and memoranda are treated as matters outside the pleadings and cannot be considered in a motion of this type." (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).  In addition, only documents that are attached to the complaint, incorporated by reference, or are otherwise integral to the complaint, are appropriately considered on the instant motion.  *Stone v. Lenovo, Inc.*, No. 6:22-CV-06548-FPG, 2024 WL 356571, at *2 (W.D.N.Y. Jan. 31, 2024).  Otherwise, "[u]nder Federal Rule of Civil Procedure 12(d), '[i]f, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'"  *McCracken v. Verisma Sys., Inc.*, No. 22-2928, 2024 WL 314945, at *5 (2d Cir. Jan. 29, 2024).

With these principles in mind and for the reasons set forth below, Defendants' motion is granted in part and denied in part.

### A.  First Amendment Retaliation Claim Pursuant to 42 U.S.C. § 1983

Plaintiff alleges that all Defendants violated her First Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983.  As to this claim, Defendants generally challenge the adequacy of the allegations, in addition to specifically contesting Plaintiff's pleading of the personal involvement of each individual Defendant, asserting the individual Defendants' entitlement to qualified immunity, and challenging the sufficiency of the *Monell* claim against the District and Board.

### 1. Sufficiency of Pleading First Amendment Claim

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

To state a plausible claim for First Amendment retaliation, a plaintiff must allege: "(1) his speech or conduct was protected by the First Amendment; (2) [Defendants] took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Persaud v. City of New York*, No. 1:22-CV-02919 (MKV), 2023 WL 2664078, at *4 (S.D.N.Y. Mar. 28, 2023) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086-FPG, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021) ("The elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case.").

The Court finds that Plaintiff's amended complaint has sufficiently pleaded the elements of such a claim. As to the first element, the Supreme Court in *Lane v. Franks*, 573 U.S. 228, 231 (2014), outlined a two-step inquiry into whether a public employee's speech is entitled to protection:

> "The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."

*Id.* at 237; *see also Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82-83 (2d Cir. 2022) ("So in assessing the first prong of the retaliation test–whether a public employee's speech is protected–we must consider 'two separate subquestions': (1) whether the employee spoke as a citizen rather than solely as an employee, and (2) whether he spoke on a matter of public concern. . . . If either question is answered in the negative, our inquiry may end there. If both questions are answered in the affirmative, we may proceed to consider whether the employer had an adequate justification for treating the employee differently from any other member of the general public based on the government's needs as an employer." (citations and quotations omitted)); *DiFonzo v. Cnty. of Niagara*, No. 1:22-CV-588, 2023 WL 1801695, at \*5 (W.D.N.Y. Feb. 7, 2023) ("A public employee's speech 'is protected by the First Amendment only when the employee is speaking as a citizen . . . on a matter of public concern.'" (quoting *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012)) (internal quotation marks omitted)); *Cecchini v. Schenck*, No. 3:14-CV-1704 (MPS), 2017 WL 902849, at \*9 (D. Conn. Mar. 7, 2017) ("To determine if a public employee's speech is protected by the First Amendment, courts must consider '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee.'" (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011))).

- 11 -

Defendants do not dispute that Plaintiff's testimony in Ashton's criminal trial was a matter of public concern outside the scope of her employment.  Indeed, the *Lane* decision makes clear that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes.  That is so even when the testimony relates to his public employment or concerns information learned during that employment."  573 U.S. at 238; *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 210 (2d Cir. 1995) ("Voluntarily appearing as a witness in a public proceeding or a lawsuit is a kind of speech that is protected by the First Amendment. . . .  There are evident policy reasons for encouraging truthful testimony and for insulating witnesses from retribution or the threat of retribution." (citations omitted)); *Urli v. Town of Hempstead Sanitary Dist.*, No. 7, No. 20CV0960(GRB)(ARL), 2021 WL 4311141, at *4 (E.D.N.Y. Sept. 22, 2021) ("'Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen' regardless of whether the testimony concerns an employee's duties because '[a]nyone who testifies in court bears an obligation, to the court and society at large, to tell the truth.'" (quoting *Lane*, 573 U.S. at 238-40)).

The second element, adverse conduct, "include[s] discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand [although t]his list of retaliatory conduct is certainly not exhaustive, however, and lesser actions may also be considered adverse employment actions."  *Raymond v. City of New York*, 317 F. Supp. 3d 746, 773 (S.D.N.Y. 2018) (quoting *Zelnik v. Fashion Institute of Technology*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotations omitted)); *see also Montero v. City of Yonkers*, 890 F.3d 386, 401 (2d Cir. 2018) ("An adverse employment action may include discharging,

refusing to hire, refusing to promote, demoting, reducing the pay, or reprimanding an employee.").  "In this context, an adverse action is conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *A.S. v. City Sch. Dist. of Albany*, No. 121CV620 (BKS/ATB), 2022 WL 356697, at *14 (N.D.N.Y. Feb. 7, 2022) (quotation and citation omitted).  "Often, the question of 'whether an undesirable employment action qualifies as being "adverse" is a heavily fact-specific, contextual determination' that is left for the jury." *Connelly v. Cnty. of Rockland*, 61 F.4th 322, 325 (2d Cir. 2023) (quoting *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006)).

While it is true that being placed on fully paid administrative leave alone will generally not suffice to constitute an adverse employment action, *Smeraldo v. Jamestown Pub. Sch.*, No. 21-CV-578-LJV, 2023 WL 424490, at *6 (W.D.N.Y. Jan. 26, 2023) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." (quoting *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006)), that rule is not absolute and there are circumstances where suspension with pay may rise to that level, *id.*  Moreover, here, in addition to being placed on administrative leave, Plaintiff alleges that she was barred from school premises and school activities, had an administrative proceeding commenced against her to strip her of teaching license, and was threatened with legal action.  In total, these allegations satisfy this requirement for purposes of the instant motion.

As to the third element, a causal connection between the protected interest and adverse action is demonstrated when a plaintiff pleads that "the protected speech was a substantial motivating factor in the adverse action." *A.S. v. City Sch. Dist. of Albany*, 2022

WL 356697, at *15; *see also Sutton v. Stony Brook Univ.*, No. 18-CV-7434(JS)(ARL), 2021 WL 3667013, at *10 (E.D.N.Y. Aug. 18, 2021) ("With regard to the causal connection element, to survive a motion to dismiss, a plaintiff must allege facts to show that the adverse action would not have been taken absent the plaintiff's protected speech."). "A plaintiff may prove causation by, among other things, showing that the adverse employment decision and the protected activity were close in time . . . ." *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021) ("[The Second Circuit has] previously found the passage of up to six months between an adverse action and protected activity sufficient to permit an inference of causation.") (citations omitted); *Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, No. 3:23-CV-191 (BKS/ML), 2023 WL 8827178, at *8 (N.D.N.Y. Dec. 21, 2023) ("In some circumstances, a plaintiff may plausibly allege a causal connection by showing that protected activity was close in time to the adverse action, though there is no bright line as to how close in time the events must be. . . .  Rather, the court must exercise judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases, . . , and may take into account the sufficiency of other allegations in determining whether a plaintiff has plausibly alleged a causal connection between the conduct and the adverse action[.]" (citations and quotations omitted)).  While Defendants argue that they had a valid basis to immediately place Plaintiff on administrative leave pending investigation, that is not the inquiry at this step.  Rather, the question is whether Plaintiff has plausibly alleged that the protected speech was a substantial motivating factor in the adverse employment action and here, Plaintiff has undoubtedly so alleged.  In her amended complaint, Plaintiff

- 14 -

alleges that within two hours of the conclusion of her testimony, she was informed that she could not return to school and just days later, was placed on administrative leave.  (Dkt. 9 at ¶ 53).

The crux of Defendants' argument seeking dismissal of this claim largely focuses on their contention that there was an adequate justification for their treatment of Plaintiff. Specifically, they vehemently defend their position that the substance of Plaintiff's testimony, including that she witnessed and failed to report Ashton's inappropriate conduct with students, provided them with a legitimate basis for placing her on administrative leave. They further argue that the "District reasonably believed that the speech, speech about a highly emotional issue during a criminal trial which was immediately publicized, was likely to cause disruption."  (Dkt. 15-6 at 18).  No doubt such arguments may constitute appropriate defenses to Plaintiff's claims and may ultimately be dispositive of the claims asserted by Plaintiff.  *See Moore v. Sequeira*, No. 3:21-CV-787 (VAB), 2023 WL 5334363, at *6 (D. Conn. Aug. 18, 2023) ("An employer may also defend against a prima facie case of retaliation by showing that it 'had an adequate justification for treating the employee differently from any other member of the general public.'  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968))).  "Under the *Pickering* balancing test, 'defendants may . . . escape liability if they can demonstrate that . . . the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression.'"  *Id.* (quoting *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011)); *Severin v. New York City Dep't of Educ.*, No. 19-CV-775 (MKV), 2023 WL 2752973, at *10

(S.D.N.Y. Mar. 31, 2023) ("[E]ven if a plaintiff establishes a *prima facie* case of First Amendment retaliation, the government is not liable if it can demonstrate by a preponderance of the evidence that it would have taken the same adverse action in the absence of the protected speech. . . .  This standard is satisfied where "a reasonable jury could not help but find that [the plaintiff] would have suffered the [same] adverse employment actions even in the absence of the protected speech." (citing *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977) (internal quotations and marks omitted))).

But Defendants' arguments as to the justification for or legitimacy of their decision to place Plaintiff on administrative leave, or their belief about whether her speech was disruptive, turn on acceptance of their version of the facts.  Conversely, Plaintiff has plausibly alleged that Defendants were fully aware of the substance of her testimony prior to Ashton's trial, and that the observations she testified to were the same as those witnessed by and known to other District employees and staff.  Consequently, she contends that Defendants' discipline of her was in retaliation for her truthful, public testimony concerning Ashton's conduct toward students—conduct that Defendants were already knowledgeable about but took no action to correct.  Because it is well-settled that the standard at this stage of the proceedings requires the Court to accept Plaintiff's version of events as true, the fact-specific questions raised by Defendants are not appropriately subject to resolution by the Court on the instant motion.  *See Severin,* 2021 WL 1226995, at *8 (noting that a whether a defendant would have taken the same adverse action even absent protected speech is highly fact-intensive and generally not appropriate for resolution at the

pleading stage); *see also Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("*Mt. Healthy* sets forth the appropriate standard for a § 1983 claim at trial, not for a motion to dismiss based on the pleadings.").

For these reasons, the Court is satisfied that Plaintiff's amended complaint sufficiently alleges the elements of a First Amendment retaliation claim and denies this aspect of Defendants' motion for judgment on the pleadings.

### 2. Personal Involvement of Individual Defendants

Defendants next argue that Plaintiff fails to allege that each of the ten named individual Defendants were personally involved in any potential violation of her constitutional rights.

"Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983." *Piasecki v. Cnty. of Erie,* No. 20-CV-1590S, 2023 WL 2992034, at *8 (W.D.N.Y. Apr. 18, 2023)*; see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (a § 1983 plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution" (quotation and citation omitted)); *Bellinger v. Fludd*, No. 20-CV-2206 (EK)(SIL), 2020 WL 6118823, at *2 (E.D.N.Y. Oct. 16, 2020) ("A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation." (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010))).

In her amended complaint, Plaintiff alleges that Defendant Kosiorek reported to the Board that Plaintiff should be placed on administrative leave, barred from school grounds, and targeted for revocation of her license.  (Dkt. 9 at ¶ 64).  She alleges that both Defendant

- 17 -

Czebatol and Defendant Dale were also involved in discussions of Plaintiff's testimony in the criminal case and participated in the decision-making process that led to Plaintiff's discipline. (*Id.* at ¶¶ 65, 66). Consequently, as to Defendants Kosiorek, Czebatol, and Dale, the Court finds that Plaintiff has sufficiently pleaded their involvement in the decision-making process that led to the alleged violations of her First Amendment rights resulting from her testimony at Ashton's criminal trial.

The same cannot be said for the Board Member Defendants. (*Id.* at ¶ 67). Plaintiff alleges that the individuals on the Board either delegated decision-making authority to Defendant Kosiorek or explicitly voted to adopt the decision that Plaintiff be placed on administrative leave, barred from school grounds, and targeted for license revocation, (*id.* at ¶¶ 67, 96), but she does not indicate the nature of the Board approval or specifically whether it was subject to a Board vote. Similarly, she does not identify the specific conduct of each Board Member Defendant that purportedly resulted in an infringement of Plaintiff's First Amendment rights. In fact, the Board Member Defendants are barely mentioned by name in the amended complaint, and when they are referred to it is only through group pleading. Under the circumstances, the claims against the Board Member Defendants must be dismissed. *See Pierro v. Hudson City Sch. Dist.*, No. 122CV670(GLS/CFH), 2023 WL 2742245, at *6 (N.D.N.Y. Mar. 31, 2023) ("Additionally, although Pierro alleges that the members of the Board of Education voted to take certain actions against her while they had knowledge of her complaints to management, Pierro . . . fails to articulate what information was relayed to each individual Board member and how each member voted. Thus, Pierro's allegations of actions taken by the individual members of the Board are not sufficient to

plausibly allege personal involvement and Pierro's Section 1983 claims against the individual members of the Board must be dismissed."); *Rys v. Grimm*, No. 619CV1251FJSATB, 2021 WL 6277298, at *9 (N.D.N.Y. Aug. 12, 2021) ("Although the Defendant Board Members did terminate Plaintiff, she has not alleged anything indicating that they were personally involved in any conduct leading up to such termination from which the Court could reasonably infer that their decision to terminate her was tainted by a gender discriminatory motive. . . . Therefore, to the extent that Plaintiff seeks to hold the Defendant Board Members individually liable based upon Defendant Carney's alleged animus, the Court will not infer that they held a discriminatory motive based upon conduct in which they were not personally involved.").

### 3. Qualified Immunity

With the First Amendment claims against Defendants Kosiorek, Czebatol, and Dale withstanding dismissal, the Court must consider the argument that they are entitled to qualified immunity.  "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (citation omitted).  Although claims of qualified immunity "should be decided as early as possible in a case," it "is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed."  *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013); *see also McKenna v. Wright,* 386 F.3d 432, 435-36 (2d Cir. 2004) (noting that generally "the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief

can be granted") (alteration in original) (quoting *Green v. Maraio,* 722 F.2d 1013, 1018 (2d Cir. 1983)).  Therefore, "a defendant asserting a qualified immunity defense on a motion to dismiss 'faces a formidable hurdle . . . and is usually not successful.'"  *Barnett v. Mt. Vernon Police Dep't,* 523 F. App'x 811, 813 (2d Cir. 2013) (quoting *Field Day, LLC v. Cnty. of Suffolk,* 463 F.3d 167, 191-92 (2d Cir. 2006)).  "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.'"  *Id.* (quoting *McKenna,* 386 F.3d at 436).

Granting a qualified immunity defense is not appropriate at this juncture.  It is clearly established law that retaliation for the exercise of protected speech is unconstitutional.  Similarly, qualified immunity requires a finding of objective reasonableness, which would be inconsistent with the Court's finding that Plaintiff has plausibly alleged such a claim.  Taking Plaintiff's allegations as true, the Court cannot conclude that the actions of Defendants Kosiorek, Czebatol, and Dale did not violate clearly established law, or that it was objectively reasonable for them to believe their actions did not violate clearly established law.  *See Cole-Hatchard v. Hoehmann*, No. 16 CV 5900 (VB), 2020 WL 5645815, at *12 (S.D.N.Y. Sept. 21, 2020) ("Moreover, the record evidence demonstrates material issues of fact, which preclude at this stage of the proceedings a determination that it was objectively reasonable for defendants to have participated in the allegedly retaliatory complained-of conduct."); *Jackson v. New York State,* 381 F. Supp. 2d 80, 91 (N.D.N.Y. 2005) ("Plaintiff alleges violations of her constitutional rights and, based on the complaint alone, it does not appear that defendants' actions were objectively reasonable.  Further factual information is necessary, therefore, to

- 20 -

determine whether defendants are entitled to qualified immunity."). Accordingly, the motion to dismiss Plaintiff's claim for violation of her First Amendment rights on grounds of qualified immunity is denied.

### 4. Liability of District and Board pursuant to *Monell*

Municipalities cannot be held vicariously liable under § 1983 for the constitutional torts of their employees, nor can they be subject to liability under § 1983 pursuant to a theory of *respondeat superior*. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Canton v. Harris*, 489 U.S. 378, 385 (1989). Instead, where a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). School districts and boards of education constitute municipal entities subject to claims of liability pursuant to § 1983. *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018).

The District and Board argue that Plaintiff's *Monell* claim fails because she does not allege the existence of an actual policy or custom or longstanding practice. They also argue that any allegation that Defendant Kosiorek acted as the final policymaker without any supporting facts is insufficient to establish liability against the District or Board under § 1983.

While it is a close call, the Court concludes that Plaintiff has sufficiently alleged that the Board and District had direct involvement in the alleged retaliatory conduct and that the District had a pattern and practice of ignoring conduct that put students at risk for

grooming behaviors and child abuse and that Plaintiff's testimony related to that policy or custom.  (Dkt. 9 at ¶ 36); *Thurber v. Finn Acad*., No. 6:20-CV-06152 EAW, 2021 WL 927627, at \*6 (W.D.N.Y. Mar. 11, 2021) ("Here, the relevant municipal entities are the School and the Board, its policymaking body.  These are also the precise entities that are alleged to have retaliated against Plaintiff for her statements regarding Baker by terminating her employment and to have terminated Plaintiff without due process of law. Plaintiff is not, as Defendants seem to suggest, required to plead a broader policy or custom when it is the municipal entity itself that is alleged to have deprived her of her rights."); *Burdick v. Bath Cent. Sch. Dist*., No. 6:19-CV-06426 EAW, 2020 WL 1435112, at \*7 (W.D.N.Y. Mar. 24, 2020) (finding First Amendment retaliation claim adequately asserted against school board and school district where the school board was alleged to have eliminated the plaintiff's position in response to her complaints about conflicts of interest and the unlawful hiring of uncertified teachers); *but see Balchan v. City Sch. Dist. of New Rochelle*, No. 21-CV-04798 (PMH), 2023 WL 4684653, at \*8 (S.D.N.Y. July 21, 2023) (dismissing *Monell* claim where plaintiff's allegations of retaliatory acts were only those directed at plaintiff and not part of a bigger custom or policy).

Moreover, "[i]n terms of municipal liability, when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiff's ability to attribute the subordinates' conduct to the actions or omissions of higher-ranking officials with policy making authority. . . . One means of doing so . . . is to establish that a policymaker ordered or ratified the subordinates' actions."  *See Davis v. Luft*, No. 5:16-CV-1337 (TJM/ATB), 2019 WL 5883698, at \*2 (N.D.N.Y. Nov. 12, 2019)

(citation and quotations omitted); *see also Nagle v. Marron*, 663 F.3d 100, 116-17 (2d Cir. 2011) (remanding case to district court on question of school district's liability, as superintendent "may himself be deemed the final decisionmaker with respect to personnel appointments, because his recommendations are essentially those of the governmental body" (quotations and citation omitted)).  Plaintiff alleges that Defendant Kosiorek, the Superintendent who acted as the official policymaker of the District, was motivated by improper animus in attempting to make Plaintiff the scapegoat for Defendants' inaction in keeping students safe.  (Dkt. 9 at ¶ 96); *see also Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 325 (W.D.N.Y. 2021) ("Plaintiffs have plausibly alleged that Hedworth, as the Police Chief for the City, was a final policymaker for purposes of the relevant events, to the extent that he had the authority to train, supervise and/or discipline Kadien, and to enforce policies and procedures for the sheriff's department.").

Taking Plaintiff's allegations as true, the District and Board may not avoid municipal liability at this stage of the litigation, and Plaintiff is entitled to discovery on whether Defendant Kosiorek acted as a final policymaker for purposes of terminating Plaintiff's employment.

### B.  Age Discrimination Pursuant to NYSHRL § 296(1)(a)

Plaintiff contends that Defendants violated NYSHRL Executive Law § 296(1)(a), which prohibits discrimination on the basis of age.  *Doolittle v. Bloomberg L.P.*, No. 22-CV-09136 (JLR), 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023) ("The NYSHRL . . . states that '[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . , because of an individual's age, . . . to discriminate against such individual in compensation

or in terms, conditions or privileges of employment.'" (quoting N.Y. Exec. Law § 296(1)(a))).

### 1. Sufficiency of Allegations to State a Claim

To survive a motion to dismiss a NYSHRL claim for age discrimination, a plaintiff must allege "differential treatment that is 'more than trivial, insubstantial, or petty,'" and "allege that her age 'was one of the motivating factors, even if it was not the sole motivating factor, for' her unequal treatment."[4]  *Id.* at *7 (quoting *Torre v. Charter Comm'cns, Inc.*,

_____

[4]      "Historically, claims under the NYSHRL were 'largely subject to the same analysis [courts] apply under Title VII.'"  *Kekovic v. Titan Motor Grp. LLC*, No. 22-CV-2142 (MKB), 2023 WL 6385712, at *11 n.5 (E.D.N.Y. Sept. 29, 2023) (quoting *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-CV-0410, 2021 WL 4944285, at *2 (2d Cir. Oct. 25, 2021)).  But in 2019, the NYSHRL was amended to "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed."  *Muniz v. City of New York*, No. 20 CIV. 9223 (JPC), 2023 WL 6294169, at *13-14 (S.D.N.Y. Sept. 27, 2023) (quoting N.Y. Exec. Law § 300).  Because Plaintiff's claim accrued after 2019, the amendments to the NYSHRL unquestionably apply to her claims.  The Second Circuit has not definitively resolved the impact that the amendments have on the standard to be applied for discrimination claims.  *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) ("'While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL,' some courts in this Circuit 'have interpreted the amendment as rendering the standard for claims closer to the standard of the [New York City Human Rights Law].'" (quoting *Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-12137, 2023 WL 2745556, at *17 (S.D.N.Y. Mar. 31, 2023)).  The Court need not resolve the question on the instant motion because it concludes that Plaintiff's claims sufficiently state a claim under either standard.  *Kekovic* 2023 WL 6385712, at *11 n.5 ("Because the Court finds Plaintiff has alleged discrimination and retaliation claims under Title VII's more stringent standard, the Court does not need to resolve the effect of the [NYSHRL] amendments."); *Austin v. Phone2Action, Inc.*, No. 21-CV-491 (MKB), 2023 WL 6201409, at *6 (E.D.N.Y. Sept. 22, 2023) ("Because the Court finds a reasonable jury could find gender discrimination under Title VII's more stringent standard, the Court does not need to resolve the effect of the amendments.").

493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) and *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40 (1st Dep't 2012)).

Here, Plaintiff's age discrimination claim arises from her assertion that she is a member of a protected class by virtue of her age, received repeated retirement questions, and was qualified for an assistant principal position that was given to a less qualified person substantially younger than Plaintiff. She alleges that her retirement occurred under circumstances giving rise to an inference of discrimination because in addition to being repeatedly questioned about retirement, she was refused job opportunities and provided inferior working conditions as a result of her age. While Defendants contend that routine inquiries about retirement do not show age bias, that Plaintiff decided to retire and was transferred to a different assignment at her own request, and that Plaintiff's salary and benefits were never reduced, those facts do not serve to negate Plaintiff's allegations which are taken as true at this time. Accordingly, Plaintiff's allegations are sufficient at this juncture and Defendants' motion to dismiss on this basis is denied.

### 2. Sufficiency of Allegations Against Each Individual Defendant

Similar to Plaintiff's § 1983 claim, Defendants argue that Plaintiff's NYSHRL claim fails because she has not adequately particularized the involvement of each individual Defendant. As to the Board Member Defendants, the Court agrees, but it does not agree as to Defendants Kosiorek, Czebatol, and Dale.

Parties may be held liable for discrimination under the NYSHRL in two ways, either as an "employer," or as an "aider and abettor" if he or she personally participates in the conduct giving rise to a discrimination claim. *See* NYSHRL § 296(6). Under the

NYSHRL, "'individual liability . . . is limited to cases where an individual defendant . . . actually participates in the conduct giving rise to the plaintiff's [discrimination or] retaliation claim." *Edelman v. NYU Langone Health Sys.*, No. 21-CV-502 (LJL), 2023 WL 8892482, at *14 (S.D.N.Y. Dec. 26, 2023) (quoting *Friederick v. Passfeed, Inc.*, 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) (alterations in original). "Such participation requires retaliatory 'intent'—and therefore necessarily requires an individual's knowledge of the protected activity at the time of his participation." *Id.* (quoting *Olaechea v. City of N.Y.*, 2022 WL 3211424, at *5 (S.D.N.Y. Aug. 9, 2022) (quotations omitted)); *Whipple v. Reed Eye Associates*, 213 F. Supp. 3d 492, 498 (W.D.N.Y. 2016) ("[I]t is well settled that managers or supervisors who fail to investigate or take appropriate remedial measures despite being informed of the discriminatory conduct may be held individually liable for aiding and abetting discrimination by an employer . . . ." (internal citations and quotations omitted)).

Here, Plaintiff alleges that she was employed by the District. She alleges that Defendant Kosiorek instructed others to tell Plaintiff she should retire at 55 and ultimately pressured her into retirement. She also alleges that Defendant Czebatol and Defendant Dale told her that she should retire and participated in the decision-making process that led to her being pressured to retire early. As to these Defendants, the allegations are sufficient.

But as to the Board Member Defendants, the amended complaint is essentially silent as to how they individually personally participated in any actions of age discrimination. Plaintiff alleges that the Board was advised of Defendant Kosiorek's intentions and that her testimony at the Ashton trial was discussed among Board members, but Plaintiff has

not specifically tied the allegations relating to age discrimination to personal actions of any individual member of the Board.  Like the § 1983 claims, the individual Board Member Defendants are barely mentioned by name in the amended complaint, and then they are mentioned it is through group pleading.  Accordingly, the allegations are not sufficient to assert claims of liability against the individual Board Member Defendants.  *See Edwards v. Khalil*, No. 12 CIV. 8442 (JCM), 2016 WL 1312149, at *25 (S.D.N.Y. Mar. 31, 2016) ("Here, the individual Board members . . . cannot be considered 'aiders and abettors' under the NYHRL because . . . the record does not support an inference that these individuals acted with discriminatory intent against Plaintiff on the basis of gender.").

### 3.  Timeliness of Claims

Defendants also argue that the claim is untimely.  Specifically, Defendants argue that Plaintiff's NYSHRL claim is subject to a one-year statute of limitations, making untimely any alleged actions occurring prior to May 15, 2022, and further contend that the entire claim is subject to dismissal because all of Defendants' alleged actions occurred more than 3 months prior to service of Plaintiff's notice of claim.  Because this issue cannot be resolved on the present record, due in part to issues concerning the accrual of the claims, the Court declines to dismiss the NYSHRL claims based on timeliness at this time.

"Section 3813(1) of the New York Education Law requires a plaintiff bringing any claim against a school district, board of education, or any officer thereof to present a written notice of the claim to the governing body of the school board within three months of the accrual of the claim.  N.Y. Educ. Law § 3813(1).  This notice requirement applies to all state and municipal claims, including 'to causes of action sounding in discrimination,

retaliation, and defamation.'" *Gehlaut v. New York City Dep't of Ed.*, No. 22CV7862AMDLB, 2024 WL 456822, at \*6-7 (E.D.N.Y. Feb. 6, 2024) (quoting *Smith v. N.Y.C. Dep't of Educ.*, 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011)).  The New York Education Law provides that any complaint filed against a district, board of education or officer thereof must be so filed within one year of the alleged unlawful discriminatory practice.  New York Educ.  Law § 3813(2-b); *Richard v. New York City Dep't of Educ.*, No. 16-CV-957 (MKB), 2022 WL 4280561, at \*38 (E.D.N.Y. Sept. 15, 2022) ("With respect to Plaintiff's NYSHRL and NYCHRL claims, such claims are subject to a one-year statute of limitations under Education Law section 3813(2-b)." (citing *Wade v. N.Y.C. Dep't of Educ.*, 667 F. App'x 311, 312 (2d Cir. 2016))).

"The accrual of a claim, as that term is employed in Education Law § 3813(1), 'occurs when damages have matured and become certain and ascertainable.'" *Williams v. New York City Dep't of Educ.*, No. 19 CIV. 1353 (CM), 2019 WL 4393546, at \*18-20 (S.D.N.Y. Aug. 28, 2019) (quoting *Bd. of Educ. of Union-Endicott Cent. Sch. Dist. v. New York State Pub. Employment Relations Bd.*, 250 A.D.2d 82, 85 (3d Dep't 1998) (internal citation omitted)).  "That determination, in turn, requires courts to 'look at the crux of the challenge being asserted.'" *Id.* (quoting *Bd. of Educ. of Union-Endicott Cent. Sch. Dist.*, 250 A.D.2d at 85).

Plaintiff's amended complaint alleges that Defendants began asking her about her retirement plans beginning in May of 2021.  Plaintiff does not maintain that each inquiry from District staff about her retirement plans constitutes a discrete act of age discrimination; rather, Plaintiff's claim is that these acts were evidence of a continuing

pattern of harassment and discrimination that culminated in her being forced to tender a letter of retirement on September 6, 2022.  She argues that her claim accrued and damages became ascertainable, at the earliest, in September of 2022, when the Board approved her retirement because the crux of her claim rests on her contention that the age discrimination she suffered resulted in ultimately being unduly pressured to retire from employment.[5] Because she filed her notice of claim on November 30, 2022, and state court complaint on May 15, 2023, and both are within the relevant time limitations, the Court agrees with Plaintiff that dismissal of the claim in its entirety on this basis has not been justified at this time.

### C.  Harassment Pursuant to NYSHRL § 296(1)(h)

Finally, Plaintiff alleges that she was subjected to harassment because of her age and that the harassment subjected her to inferior terms, conditions, or privileges of employment, in violation of NYSHRL § 296(1)(h).

#### 1.  Sufficiency of Allegations

"Under the NYSHRL, the plaintiff need only show that she was subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the[ ] protected categories." *Mitura v. Finco Servs., Inc.*, No. 23-CV-2879 (VEC), 2024 WL 232323, at *4 (S.D.N.Y. Jan. 22, 2024) (quotation omitted) (noting that the NYSHRL as amended "eliminates the requirement that harassing

---

[5]     The Court is not as persuaded that the harassment claims did not accrue until Plaintiff tendered her letter of retirement, but on this record it is not possible to definitively determine that those claims accrued more than three months before the notice of claim was filed.

or discriminatory conduct be 'severe or pervasive' for it to be actionable; instead, the conduct need only result in 'inferior terms, conditions or privileges of employment.'" (quoting N.Y. Exec. L. § 296(1)(h)).  While not fulsome, the Court finds that Plaintiff's amended complaint does minimally meet the threshold for the assertion of such a claim, for the same or similar reasons to those stated above with respect to her age discrimination claim.  And the same reasons also apply as to the sufficiency of allegations against each of the individual Defendants.

Accordingly, Defendants' motion for judgment on the pleadings dismissing this claim is denied as to Defendants Kosiorek, Czebatol, Dale, the District and the Board, but granted as to the Board Member Defendants.

### 2.  Sufficiency of Notice of Claim

Separate and apart from the sufficiency of the allegations for such a claim, Defendants also contend that this claim is subject to dismissal because Plaintiff failed to identify it in her notice of claim.On this point, the Court disagrees.

"Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees." *Grant v. City of Syracuse*, No. 5:15-cv-445, 2017 WL 5564605, at *10 (N.D.N.Y. Nov. 17, 2017) (internal quotation marks and citation omitted); *Washington v. City of New York*, 190 A.D.3d 1009, 1010 (2d Dep't 2021) ("To enable authorities to investigate, collect evidence and evaluate the merit of a claim, persons seeking to recover in tort against a municipality are required, as a precondition to suit, to serve a Notice of Claim." (citations omitted)). "Notice of claim requirements are construed strictly by New York state courts. . . .  Failure

to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (citation omitted); *Rossy v. City of Buffalo*, No. 17-CV-937S, 2023 WL 5725283, at *14 (W.D.N.Y. Sept. 5, 2023) ("Any theory of liability omitted from the notice of claim may not be included in a subsequent lawsuit." (quoting *Jewell v. City of N.Y.*, No. 94 Civ. 5454 (DLC), 1995 WL 86432, at *1 (S.D.N.Y. Mar. 1, 1995)).  While "[a] plaintiff may not later add a new theory of liability that was not included in the notice of claim," "[n]ot every cause of action in the Notice of Claim need be set forth *in haec verba*, as long as the details pertaining to such a claim are described sufficiently . . . to enable the city to investigate the claims." *Nolan v. County of Erie*, No. 1:19-cv-01245, 2021 WL 51004, at *5 (W.D.N.Y. Jan. 6, 2021) (internal quotation marks and citation omitted).

Here, the notice of claim states that Plaintiff asserts a claim for forcing her into retirement because of her age in violation of NYSHRL § 296(1)(a) and retaliation in violation of the First Amendment.  (Dkt. 15-5 at 2).  Plaintiff acknowledges that the notice of claim makes no mention of harassment or a hostile work environment based on age, but argues that the notice of claim is nevertheless sufficient because the information provided therein presented the essential facts supporting the additional legal theory.  "The fact that a cause of action not mentioned in the notice of claim arises out of the same incident as enumerated claims is not pivotal; rather, the nature of the claim and the theory of liability are determinative." *Logan v. City of Schenectady*, No. 118CV01179BKSCFH, 2019 WL 3803631, at *11 (N.D.N.Y. Aug. 13, 2019) (quoting *Nieblas-Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 76 (S.D.N.Y. 2016)); *see also Santana v. Mount Vernon City Sch.*

*Dist./Bd. of Educ.*, No. 20-CV-3212 (NSR), 2023 WL 2876653, at *10 (S.D.N.Y. Apr. 7, 2023) (noting that for analogous EEOC complaint, "claims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency," *i.e.*, where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"). Here, Plaintiff's claim for age discrimination and for harassment as a result of her age both derive from the same exact factual allegations and an investigation of the age discrimination claim would encompass the same issues presented for a claim for harassment on the basis of age. Given that the same underlying facts support both claims and that the information contained in the notice of claim would adequately notify Defendants as to both claims, dismissal of Plaintiff's harassment claim is not warranted on this basis.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for judgment on the pleadings. Specifically, the motion for judgment on the pleadings is denied as to Defendants Kosiorek, Czebatol, Dale, the District, and the Board, but granted as to the Board Member Defendants who are dismissed without prejudice. The Court further denies Defendants' motion to stay discovery as moot. The Clerk of Court is directed to terminate Defendants Chaffee, Flannery, Hilburger, Mascadri, O'Connor, Pickering, and Sloan.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 16, 2024
        Rochester, New York